# No. 25 - 20059

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**ANADARKO PETROLEUM CORPORATION,**
**Plaintiff – Appellee,**

**v.**

**ALTERNATIVE ENVIRONMENTAL SOLUTIONS, INC.,**
**Defendant – Appellant.**

---

Appeal From C.A. No. 4:24-cv-01027
United States District Court, Southern District of Texas, Houston Division,
Hon. Kenneth D. Hoyt, Presiding

---

## BRIEF OF APPELLANT
## ALTERNATIVE ENVIRONMENTAL SOLUTIONS, INC.

---

Joseph R. Ward, Jr. (Attorney-In-Charge)
WARD & CONDREY
438 S. New Hampshire St
Covington, Louisiana  70433
(985) 871-5223 (Telephone)

Paul K. Nesbitt
SUTTER & KENDRICK, P.C.
5858 Westheimer Rd., Suite 688
Houston, Texas  77057
Tel: (713) 595-6000  (Telephone)

**COUNSEL FOR DEFENDANT / APPELLANT**

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Plaintiff - Appellee: | Counsel for Appellee: |
|---|---|
| Anadarko Petroleum Corporation | Russell Jarrett<br>Laura Springer Brown<br>Michael Cash<br>Liskow & Lewis, A.P.L.C.<br>New Orleans, Louisiana |

| Defendant / Appellant: | Counsel for Appellant: |
|---|---|
| Alternative Environmental Solutions, Inc. | Joseph Ward<br>Ward & Condrey, L.L.C.<br>Covington, Louisiana<br><br>Paul K. Nesbitt<br>Sutter & Kendrick, P.C.<br>Houston, Texas |
| Stanley Palowsky III (As Shareholder) | |

*/s/ Joseph R. Ward, Jr.*
Joseph R. Ward, Jr.
Counsel for Appellant

ii

# STATEMENT REGARDING ORAL ARGUMENT

The issues involved in this appeal arise from a lawsuit that Stanley R. Palowsky and Appellant AESI filed against Anadarko in a Louisiana state district court in 2017 (the "Palowsky Lawsuit"), and which remains pending. The record reflects that Anadarko participated in the Palowsky Lawsuit for six years before it even raised an issue regarding venue. Then in 2024, Anadarko chose to file the subject action in U.S. District Court in Houston – in a belated effort to find a more favorable forum. Appellant believes that the district court overlooked many critical facts regarding the Palowsky Lawsuit in order to award contractual indemnification to Anadarko against the Palowsky Lawsuit – and to award Anadarko over $1 million in attorneys' fees from AESI. As the procedural history of the Palowsky Lawsuit is fact-intensive, and significantly impacts proper resolution of the issues presented in this appeal, Appellant AESI would show that oral argument would be highly beneficial to the Court.

# TABLE OF CONTENTS

**Contents**                                                                                    **Page(s)**

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF CONTENTS ........................................................................................iv

TABLE OF AUTHORITIES ................................................................................ vii

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF THE ISSUES.............................................................................2

STATEMENT OF THE CASE ...............................................................................3

       A.     Factual Background.....................................................................................3

            1.  The Anadarko / AESI Master Service Contract...............................3

            2.  AESI's Operations At Sites In Louisiana and Wyoming ...............5

       B.     Procedural Background .........................................................................5

            1.  The Palowsky / AESI Lawsuit In Louisiana State Court ...............5

            2.  Anadarko File New Action In Southern District Of Texas  ...........9

            3.  Anadarko's Motion for Summary Judgment .................................9

            4.  District Court's Disposition of Motion for Summary Judgment ...10

SUMMARY OF THE ARGUMENT ...................................................................13

ARGUMENT ......................................................................................................15

I.    The District Court Erred By Granting Anadarko's Motions For
      Summary Judgment And Ruling, As A Matter Of Law, That The
      MSC's Indemnities Provision Was Enforceable Against AESI ........15

      A. The standard of review is *de novo* ...............................................15

          1. The District Court Erred by Enforcing The MSC's
             Choice of Texas Law Provision ...............................................16

          2. Louisiana has a materially greater interest in the MSC
             than Texas ...............................................................................20

          3. Enforcement of the MSC's Choice of Texas Law provision
             contravened Louisiana policy ..................................................21

      B. The Louisiana Oilfield Anti-Indemnity Act Precludes
         Enforcement of the Indemnity Provision........................................23

      C. Under Any Substantive Law, the Obligation
         To Indemnify Anadarko Against The Palowsky
         Lawsuit Is Unenforceable, and Genuine Issues of
         Fact Precluded The District Court's Grant of Relief ....................25

      D. The District Court Erred by Disregarding Evidence of
         Anadarko's Conduct That Raised a Fact Issue Of
         Estoppel .........................................................................................28

      E. The District Court Erred by Ordering AESI To Indemnify
         Anadarko For All Damages, Including the Punitive Damages
         Sought – Which Are Expressly Excluded ......................................29

      F. The District Court Erred by Disregarding Uncontroverted
         Evidence Of Anadarko's Failure to 'Promptly Notify"
         AESI of Its claim for Indemnification Under the MSC ................29

II.   The District Court Erred in Granting Anadarko's Motion To
      Fix Attorneys' Fees, And by Awarding The Full Amount of
      Fees Sought ........................................................................................32

      A. The Standard of Review is Abuse of Discretion ...........................32

v

B. The District Court Erred In Granting Anadarko's Motion to Fix Attorneys' Fees Via Rule 54, Over AESI's Demand For Jury and Objections ................................................................33

C. The District Court Erred In Granting Anadarko's Motion to Fix Attorneys' Fees When It Failed to Satisfy the Burden of Proof ...35

CONCLUSION ........................................................................................42

CERTIFICATE OF SERVICE ...............................................................44

CERTIFICATE OF COMPLIANCE .....................................................44

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Pages(s)**

*Allen v. U.S. Postal Serv.*, 63 F.4th 292 (5th Cir. 2023)..........................................16

*American Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482
  (5th Cir. 2004) ...................................................................................... 34, 35

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)............................................16

*Blum v. Stenson,* 465 U.S. 886 (1984) ...................................................................39

*Bynum v. Am. Airlines*, 166 F. App'x. 730 (5th Cir. 2006) .............................. 39, 40

*Cannon Oil and Gas Well Services, Inc. v. KLX Energy Services,*
  20 F.4th 184 (5th Cir. 2021) .................................................................... 19, 20, 21

*Cardoni v. Prosperity Bank*, 805 F.3d 573 (5th Cir. 2015)................. 17, 18, 20, 21

*Cardoso-Gonzales v. Anadarko Petroleum Corp.*, 326 F.Supp.3d 273
  (E.D. La. 2018) ....................................................................................... 22, 24

*Chisholm v. Hood*, 90 Fed. Appx. 709 (5th Cir. 2004).................................... 38, 39

*Collins Backhoe & Water Service v. Anadarko Petroleum Corporation*,
  2016 WL 1162191 (S.D. Tex. 03/23/2016)...........................................................25

*DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex. 1990) ........................... 17, 20

*Emerald Forest Utility Dist. v. Simonsen Const.*, 679 S.W.2d 51
  (Tex. App. -- Houston [14th Dist.] 1984, *no writ*)...............................................31

*In re Alonzo*, 540 F. App'x 370 (5th Cir. 2013) ....................................................41

*In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220
   (5th Cir. 2008)) ................................................................................33

*In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d at 168 (Tex. 2013) ...............34

*Kinsel v. Lindsey*, 526 S.W.3d 411 (Tex. 2017) ......................................................41

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) .....................................16

*La. Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir.1995).............. 35, 36, 37

*Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389 (5th Cir. 1995) ...................31

*League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe
   Indep. Sch. Dist.*, 119 F.3d 1228 (5th Cir. 1997) ..................................................36

*Leroy v. City of Houston (Leroy I)*, 831 F.2d 576 (5th Cir. 1987) ................... 35, 37

*Leroy v. City of Houston (Leroy II)*, 906 F.2d 1068 (5th Cir. 1990) ......................36

*Macias v. Moreno*, 30 S.W.3d 25 (Tex. App. - El Paso 2000, *pet. denied*) ............27

*Maxus Exploration Co. v. Moran Bros.*, 817 S.W.2d 50 (Tex. 1991)....................19

*McClain v. Lufkin Indus., Inc.*, 649 F.3d 374 (5th Cir. 2011) .................................39

*Montgomery v. Browder*, 930 S.W.2d 772 (Tex. App. - Amarillo 1996,
   no writ)...................................................................................................................27

*Nabors Completion & Prod. Servs. Co. v. Chesapeake Operating Inc.*,
   648 Fed. Appx. 393 (5th Cir. 2016) ....................................................................11

*Palmisano v. Mascaro*, 611 So. 2d 632 (La. Ct. App. 4th Cir. 1992) ....................26

*Palowsky v. Cork,* 2020 WL 2745516, 2019-0148 (La. App. 1
   Cir. 5/20/20).................................................................................. 7, 8, 9

*Randolph v. Dimension Films*, 634 F.Supp.2d 779 (S.D. Tex. 2009) .............. 35, 36

*Redfish Rentals, Inc. v. Specialty Industrial, L.L.C.*, 310 So. 3d 170,
    2020-CW-0685 (La. App. 1 Cir. 11/9/20) ................................................. 6

*Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035
    (5th Cir. 2014) ...................................................................... 33, 34, 35

*Roberts v. Energy Dev. Corp.*, 235 F.3d 935 (5th Cir. 2000) .................... 19, 21, 23

*Rodrigue v. LeGros*, 563 So.2d 248 (La. 1990) ....................................... 23

*Rogers v. Jarrett*, 63 F.4th 971 (5th Cir. 2023) ..................................... 15

*Roman Catholic Diocese of Dallas ex rel. Grahmann v. Interstate*
   *Fire & Cas. Co.*, 133 S.W.3d 887 (Tex. App.-Dallas 2004, pet. denied) ........... 28

*Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639
    (5th Cir. 2004) ................................................................... 31, 32

*Saks v. Sawtelle, Goode, Davidson, Troilo*, 880 S.W.2d 466
    (Tex.App. - San Antonio 1994, *writ denied*) ..................................... 27

*Sanchez Oil & Gas Corp. Crescent Drilling & Prod., Inc.*, 7 F.4th 301
    (5th Cir. 2021) ................................................................... 15

*Sonat Exploration Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228
    (Tex. 2008) ...................................................................... 22

*TIG Ins. Co.  v. Woodsboro Farmers Coop.*, 117 F.4th 715 (5th Cir. 2024) ......... 15

*Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347 (5th Cir. 2019) ......................... 32, 33

*Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985
    (5th Cir. 1992) ................................................................... 24

*Tranverse, LLC v. Iowa Wireless Serv.'s, LLC*, 992 F.3d 336
   (5th Cir. 2021) ................................................................... 41, 42

*Tyler v. Cedar Hill Independent School Dist.*, 433 Fed.Appx. 265
   (5th Cir. 2011) ........................................................................35

*Verdine v. Ensco Offshore Co.*, 255 F.3d 246 (5th Cir. 2001) ........................ 22, 23

*Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)...............................................36

*Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 784 (S.D. Tex. 2007) ............40

*Wildhorse Res. Mgmt. Co., LLC v. G&C Constr. Int'l Co.*, No.
   H-18-2456, 2019 WL 5684228 (S.D. Tex. Oct. 31, 2019) ......... 18, 19, 20, 21, 23

## <u>Statutes</u>

LA. C.C. art. 2004......................................................................................26

Louisiana Code of Civil Procedure article 44(C) ......................................................6

LA. REV. STAT. § 9:2780 ("LOIA") ....................................................................21

LA. REV. STAT.§ 2780(A)......................................................................................22

LA. REV. STAT.§2780(G)......................................................................................23

TEX. CIV. PRAC. & REM. CODE §§ 127.001-127.007 ....................................22

28 U.S.C. 1332(a)(1)...............................................................................................1

29 U.S.C. § 1291 ....................................................................................................1

**Other Authorities**

RESTATEMENT (SECOND) OF CONFLICT OF LAWS §187(2)......................17

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188 .......................17

RESTATEMENT (SECOND) OF CONFLICTS OF LAWS § 188(2)..................18

**Rules**

FED. R. APP. P. 32(a)(5) ............................................................................44

FED. R. APP. P. 32(a)(6) ............................................................................44

FED. R. APP. P. 32(a)(7)(B) .......................................................................44

FED. R. APP. P. 32(f) ............................................................................... 44

Fed. R. Civ. P. 54 .......................................................................... 3, 33, 34

Fifth Circuit Rule 28.2.1 ............................................................................. ii

Fifth Circuit Rule 32.1 ..............................................................................44

# JURISDICTIONAL STATEMENT

This appeal is taken from an action filed by a citizen of the state of Delaware against a citizen of the state of Louisiana. As a result, the district court possessed jurisdiction over the subject matter based upon complete diversity of citizenship between the parties under 28 U.S.C. 1332(a)(1).

This appeal is taken from a Judgment that awarded Plaintiff / Appellee Anadarko defense and indemnity from Defendant / Appellant AESI against the Palowsky Lawsuit. (RE-T7; ROA.627 – 628). This appeal is also taken from a subsequent Order Awarding Plaintiff / Appellee Anadarko attorneys' fees and costs from Defendant / Appellant AESI in respect of the Palowsky Lawsuit. (RE-T4; ROA.1226 – 1230). This Court has jurisdiction to review the Judgment and the underlying Orders made the basis of this appeal pursuant to 29 U.S.C. § 1291.

Following the Judgment signed January 24, 2025 (RE-T7; ROA.627 – 628), Defendant / Appellant AESI timely filed its Notice of Appeal on February 21, 2025. (RE-T2; ROA.1200 – 1201.) The district court's Memorandum and Order Awarding Costs and Attorney Fees to Anadarko was signed on March 20, 2025. (RE-T4; ROA.1226). Defendant / Appellant AESI timely filed its Amended Notice of Appeal on April 17, 2025 (RE-T3; ROA.1234).

# STATEMENT OF THE ISSUES

1.    Did the district court err by overruling AESI's Motion To Dismiss, or to Stay, Anadarko's claims for declaratory judgment and for breach of the Anadarko MSC because they were insufficiently ripe for adjudication?

2.    Did the district court err in granting Anadarko's Motion for Summary Judgment, and in declaring it entitled to defense costs and indemnification, by:

a.    applying the substantive law of Texas to Anadarko's claims, to the exclusion of the substantive law of Louisiana or of Wyoming – whose respective Oilfield Anti – Indemnity Acts and public policies preclude enforcement of the indemnity obligations contained in Anadarko's MSC against a contractor such as AESI?

b.    concluding that the Palowsky Lawsuit alleges a Claim against Anadarko and its employee Dana Howard under the Indemnities section of Anadarko's MSC - that entitles each to defense and indemnity against the Palowsky Lawsuit as a matter of law?

c.    disregarding AESI's evidence of Anadarko's failure to furnish AESI prompt written notice and demand for defense against the Palowsky Lawsuit, per the Indemnities section of Anadarko's MSC, which established a genuine issue of material fact?

2

    d.    disregarding AESI's evidence of affirmative defenses – which established genuine issues of material fact?

3.    Did the district court err in granting Anadarko's Motion To Fix Attorneys' Fees, and in awarding the full amount it claimed as attorneys' fees to defend the Palowsky Lawsuit:

    a.    Under Rule 54, when AESI had filed a Demand for Jury, and Objections?

    b.    When Anadarko's evidence plainly failed to meet its burden of proof?

## STATEMENT OF THE CASE

This appeal arises from a longstanding dispute between Defendant / Appellant AESI, an environmental remediation contractor, and Plaintiff / Appellee Anadarko, an oil and gas exploration and production company.

### A.  Factual Background

#### 1.  The Anadarko / AESI Master Service Contract

On May 16, 2008, Anadarko and AESI entered into a Master Service Contract ("MSC") for the performance of oilfield remediation services on certain sites to be designated by Anadarko.  (RE-T8; ROA.297- 303).  The Indemnities section states that AESI is obligated to defend and indemnify Anadarko against certain "Claims" – which is defined as:

‘Claim' or ‘Claims' means, unless specifically provided otherwise, all claims (including, but not limited to, those for … damages (including consequential

3

and indirect damages), liabilities, losses, demands, liens, encumbrances, fines, penalties, causes of action of any kind … obligations, costs, judgments, interest and awards (including payment of attorneys' fees and costs of litigation and investigation costs) or amounts, of any kind or character, (except punitive or exemplary damages), whether under judicial proceedings, administrative proceedings or otherwise … under any theory of tort, contract, breach of contract, … arising in connection with this Agreement or the performance of the Work under this Agreement[.]

(RE-T8 at p.3; ROA.299 - 300). Another provision of the MSC states that Contractor "agrees to be responsible for and to assume all liability for, and agrees to defend, release, indemnify, and hold harmless Company from and against Claims arising in connection with Contractor Indemnitees' violation of Applicable Laws". (RE-T8; ROA.301). The term "Applicable Laws" is defined to mean "statutes, regulations, rules, codes, whether governmental or industry, interim administrative order, and/or enforcement actions." (RE-T8; ROA.297). The phrase "Company Indemnitees" includes Anadarko and its employees, and the phrase "Contractor Indemnitees" includes AESI, its officers, and its subcontractors. (RE-T8; ROA.300).

However, the Indemnities provision of the MSC expressly states that:

(3) The Indemnity obligations contained in this Agreement do not include indemnification for punitive or exemplary damages under any law or otherwise.

(RE-T8; ROA.300). Further, the Indemnities section expressly requires the party seeking indemnification to provide notice:

(7) Each Party will promptly notify the other Party after receipt of any Claim for which it may seek indemnification. Each Party also shall immediately notify the other of any occurrence in which physical Injury

4

occurs and to complete and provide the other party with an accident report for each such occurrence.

(RE-T8; ROA 25-20059.300).

## 2.  AESI's Operations At Sites In Louisiana and Wyoming

In 2012, AESI performed work for Anadarko at the Branch and Sarepta sites located in the State of Louisiana. AESI also performed work for Anadarko at its Carpenter A-1 Wellsite located in Evanston, Wyoming.  (RE-T9; ROA.494, para. 10).  That work performed for Anadarko, the invoices submitted to Anadarko, and the payments gave rise to the fraud and racketeering allegations against Anadarko and its co-conspirators that gave rise to the Palowsky Lawsuit.   (RE-T9; ROA.494 para. 10 - 16).   AESI asserts that an overbilling and kick-back scheme was perpetrated by Brandon Cork, by a former subcontractor to AESI, by a sub-subcontractor (whom Anadarko had instructed AESI to use), and by Ms. Dana Howard - for whose unlawful conduct Anadarko is vicariously liable as employer. (RE-T9; ROA.494 at para. 10 - 26).

## B.    Procedural Background

## 1.    The Palowsky / AESI Lawsuit In Louisiana State Court

In 2017, the Palowsky Lawsuit was amended to realign AESI as a Plaintiff, and to add Anadarko and Anadarko's employee Dana Howard as co-defendants. (ROA.316) (the "Palowsky / AESI Lawsuit").  As amended, the Palowsky / AESI Lawsuit alleged an overbilling and kick-back scheme was perpetrated by Brandon

Cork, by a former subcontractor to AESI, by a sub-subcontractor (whom Anadarko had instructed AESI to use), and by Ms. Howard of Anadarko - for whose unlawful conduct Anadarko is vicariously liable as her employer.  (ROA.327 - 332) The Petition alleges that the overbillings exceeded $1,000,000.  (ROA.329)

Anadarko's Answer to the Palowsky /AESI Lawsuit contained a general denial and two affirmative defenses (failure to state a cause of action, and comparative fault).  (ROA.500 - 501)  It contained ***no objection to venue in Ouachita Parish*** – whether pursuant to the MSC's "Choice of Law / Venue" provision or otherwise.  Under settled Louisiana law, Anadarko's actions constituted a waiver of its rights, if any, to object to venue.[1]

On March 26, 2018, Anadarko then filed a Peremptory Exception of No Cause of Action in the Palowsky Lawsuit, challenging any vicarious liability for Ms. Howard's actions and asking for **all** Plaintiffs' claims to be dismissed. (ROA.504 - 525)  This pleading failed to assert that venue was improper in Ouachita Parish – whether based on the Venue provision of the MSC, or for any other reason.

On June 15, 2018, the Ouachita Parish court ruled that Anadarko could not be liable for the acts of Howard on the basis of *respondeat superior,* sustained

---

[1]  See Louisiana Code of Civil Procedure article 44(C), providing that "any objection to the venue . . . is waived by the failure of the defendant to plead the declinatory exception timely as provided in Article 928."; *Redfish Rentals, Inc. v. Specialty Industrial, L.L.C.*, 310 So. 3d 170, 2020-CW-0685 (La. App. 1 Cir. 11/9/20), writ denied, 2020-CC-01408 (La. 2/9/21)(defendant waived right to assert forum selection clause by filing Answer without filing an exception of improper venue).

Anadarko's exception and dismissed AESI's claim. On review, the Louisiana Court of Appeal reversed that ruling and remanded the matter to the trial court for further proceedings.[2]

On July 17, 2020, AESI Plaintiffs filed its Restated Fourth Supplemental and Amending Petition ("Fourth Amending Petition") in the Palowsky Lawsuit. (ROA.338 – 406). For actual damages, the Fourth Amending Petition sought an award for loss of AESI's profits and opportunities, loss of reputation, and attorneys' fees from Howard and from Anadarko as her employer. (ROA.386). Significantly, the Petition also sought an award of punitive damages for fraud committed by all Defendants. (ROA.384 - 387).

Anadarko filed no pleading to assert that venue was somehow improper in Ouachita Parish – whether under the Venue provision of the MSC, or otherwise. On September 14, 2020, Anadarko filed a Motion for Partial Summary Judgment seeking dismissal of AESI's claims based on the Louisiana equitable doctrine of unclean hands. (ROA.515 - 525) While Anadarko attached a copy of its MSC as Ex. 3 to its Motion, (ROA.521), it again failed to mention the MSC's "Choice of Law / Venue" provision or any potential impact. Instead, Anadarko's Motion was based upon Louisiana substantive jurisprudence, including Louisiana's "Unclean

---

[2] See *Palowsky v. Cork,* 2020 WL 2745516, 2019-0148, p. 13 (La. App. 1 Cir. 5/20/20) (ROA.432 – 437).

Hands Doctrine". (ROA.522 - 525).  The trial court granted Anadarko's Motion for Partial Summary Judgment.  (ROA.213 - 215).  On appeal, the Louisiana Court of Appeal for the Fifth District reversed.[3]  It ordered the Palowsky / AESI Lawsuit to be remanded to the Ouachita Parish trial court for further proceedings and trial. (ROA.11)

Upon remand, Anadarko participated in the depositions of its former employee Dana Howard and of Stanley Palowsky.  Initially, it filed no pleadings to challenge venue in Ouachita Parish over AESI's claims against Anadarko.  But in mid-2023, after additional depositions were set, Anadarko then filed a "motion for summary judgment" – asserting for the first time that a "Choice of Law/Venue" provision in its MSC called for the Palowsky litigation to proceed in a Texas court. (ROA.213 - 215).

AESI vigorously objected, pointing out that Anadarko's failure to timely file objections to venue constituted waiver of such right under controlling Louisiana code provisions.  However, on July 2, 2024, the Ouachita Parish trial court signed a Judgment granting Anadarko's motion.  (ROA.213 - 215).  AESI filed an appeal of the Judgment to the Court of Appeal, Second Circuit, in which the parties filed their

---

[3] *Palowsky v. Cork*, 337 So. 3d 550, 21-435 (La. App. 5 Cir. 3/16/22), *writ denied*, 338 So. 3d 1200, 2022-00646 (La. 6/8/22).

Briefs in May, 2025.[4]

### 2.     Anadarko Files New Action In Southern District of Texas

While its motion for summary judgment on the MSC was still pending before the Ouachita Parish trial court, Anadarko chose to file a completely new action in the Southern District of Texas. (ROA.1 - 16). Anadarko's Complaint asserted, for the first time in six years of litigation, that the MSC's Indemnification provision entitled it to: a) a Texas forum; and b) defense and indemnity from AESI against the Palowsky Lawsuit.  (ROA.1 - 16).

AESI filed a Motion to Stay Anadarko's action, under principles of federalism and comity, to permit the state courts of Louisiana to exercise jurisdiction over the same parties and adjudicate the same disputes. (ROA.157 – 179).  The Motion to Stay was overruled in a one-page Order, without analysis or explanation. (ROA.243).  AESI then filed its Answer and affirmative defenses to Anadarko's Complaint (ROA.244 - 257) and its Demand for Jury.  (ROA.258 - 259).

### 3.     Anadarko's Motion for Summary Judgment

Anadarko then filed a Motion for Summary Judgment on its claims for declaratory judgment, and for breach of the MSC's Indemnities provision. (ROA.273 - 295). The Motion emphasized that Brandon Cork had signed the MSC

---

[4]  See No. 56,318-CA, *Stanley R. Palowsky III et al. v. W. Brandon Cork, et al.*; In the Court of Appeal for the Second Circuit.  AESI's separate claims against the other co-defendants remain pending in Ouachita Parish pending the appeal.

for AESI (ROA.281) – but failed to mention that Anadarko was on notice that Cork had been divested of authority to act as sole signatory on AESI agreements. It also furnished no evidence of when Anadarko first determined that the Palowsky / AESI Lawsuit might trigger the Indemnities provision – and no explanation for its failure to "promptly" serve a notice and demand for defense upon AESI. (ROA.273 - 295).

AESI's Response explained why summary judgment was inappropriate as a matter of law – supported by the Declaration of Stanley Palowsky detailing AESI's affirmative defenses to the Motion. (ROA.466 - 491). The Response emphasized that Anadarko's Motion was not ripe, and constituted improper interference with a pending state court lawsuit. (ROA.479). It detailed the extensive actions taken by Anadarko in the Palowsky Lawsuit for over six years, plus its failures to timely challenge venue (ROA.492 - 494). It also confirmed Anadarko's failure to serve notice and demand upon AESI for defense and/or indemnification under the MSC. (ROA.493 - 494).

### 4.    District Court's Disposition Of Motion for Summary Judgment

On December 23, 2024, the district court issued a Memorandum and Order ruling that Anadarko's MSC entitled it to indemnification from AESI against the Palowsky Lawsuit, as a matter of law. (RE-T5; ROA.619 - 623). In the "Analysis & Discussion" section, the Order conceded that the work at issue did occur in Wyoming. But the Order summarily concluded, with no stated analysis or

10

substantive discussion, that AESI's evidence failed to establish oilfield operations as defined under Louisiana law, such that the Louisiana Oilfield Indemnity Act (LOIA) was inapplicable and irrelevant. (RE-T5; ROA.622). The Order stated that the MSC's designation of Texas law would not violate any fundamental policy of the States of Louisiana or of Wyoming. (RE-T5; ROA.622).

The Order stated, without analysis, that AESI's "argument" against enforcing the indemnity provisions was unpersuasive. Yet the Order mentions only one of AESI's arguments – the one pointing out that Anadarko and its employee Dana Howard were being sued for unlawful misconduct that damaged AESI. It stated that such conduct was "irrelevant". (RE-T5; ROA.622). The Order concluded that Anadarko seeks indemnity "not for Ms. Howard's alleged violations of law - but for claims arising from AESI's admitted violations." (RE-T5; ROA.622). But a cursory review of the Palowsky Lawsuit Amended Petition belies the district court's characterization – as it expressly alleges that Ms. Howard committed violations of applicable law – for which Anadarko is vicariously liable. (ROA.360 - 384). As Anadarko sought to compel AESI to indemnify Anadarko for damages resulting from violations of law by an Anadarko employee, as the Palowsky Lawsuit alleges, Howard's conduct was not only relevant – but was critical. (ROA.487 - 489).

The Order cited the case of *Nabors Completion & Prod. Servs. Co. v. Chesapeake Operating Inc.*, 648 Fed. Appx. 393 (5th Cir. 2016), for the proposition

11

that an indemnity agreement is to be enforced as written if it is clear and unambiguous. (RE-T5; ROA.623). After deeming the MSC to be unambiguous, the court ruled that the Texas choice-of-law provision should be enforced. (RE-T5; ROA.622).

The Order failed to mention, much less evaluate, AESI's objection and undisputed evidence of Anadarko's failure to furnish notice "promptly" of its request for indemnification. (ROA.489 - 490). The lack of such evidence, plus AESI's undisputed denial of timely notice, plainly established a genuine issue of material fact that precluded summary judgment for Anadarko.

The Order also failed to mention, much less evaluate, AESI's responsive evidence on its affirmative defenses to enforcement of the Indemnities provision - which established genuine issues of material fact that warranted denial of summary judgment to Anadarko. (RE-T5; ROA.622). The district court issued a separate document titled "Judgment" declaring that the MSC obligated AESI to provide defense and indemnity against the Palowsky Lawsuit. (RE-T7; ROA. 627 - 628). AESI thereafter filed its Notice of Appeal of the district court's "Judgment". (RE-T2; ROA.1200 - 1201)

On February 7, 2025, Anadarko filed a Motion to Fix Attorneys' Fees – for fees incurred to prosecute its claims in this lawsuit plus for fees Anadarko had incurred to defend itself and its employee Howard against the Palowsky Lawsuit.

12

(ROA.633 - 631).  AESI's Objection and Response objected, on grounds that the amount of Anadarko's fees was part of its remedy, and should be decided via a jury trial – not by the Court on a post-trial submission. (ROA.1206 - 1212).  Separately, the Declaration of Mike Haysley of Anadarko (ROA.642 - 643) failed to establish the elements needed to discharge Anadarko's burden of proof to recover an award of fees for the Palowsky Lawsuit.  (ROA.1206 - 1212).

On March 20, 2025, the district court issued a Memorandum and Order (RE-T4; ROA.1226 - 1230) that disregarded AESI's objections to the documents filed by Anadarko as support for its fees, with no analysis or explanation other than "the case law cited by AESI is inapplicable here".  (RE-T4; ROA.1229)  The Order awarded Anadarko every penny of attorneys' fees and expenses requested for the Palowsky lawsuit ($953,254.91), plus costs and fees for prosecuting the current action ($77,877), or $1,031,142.48 in total.  (RE-T4; ROA.1230)  AESI filed its Amended Notice of Appeal.  (RE-T3; ROA.1231 - 1232)

## SUMMARY OF THE ARGUMENT

The district court erred by overruling AESI's Motion To Dismiss, or to Stay, Anadarko's claim for declaratory judgment and for breach of the MSC because it was not sufficiently ripe for adjudication.

The district court erred in applying the substantive law of Texas to Anadarko's claims, to the exclusion of the substantive law of Louisiana or of Wyoming – whose

respective Oilfield Anti – Indemnity Acts and public policies preclude enforcement of the forms of indemnity obligations contained in Anadarko's MSC.

The district court erred in concluding that the Palowsky Lawsuit alleges a Claim against Anadarko and its employee Dana Howard under the Indemnities section of Anadarko's MSC - that entitles each to defense and indemnity against the Palowsky Lawsuit as a matter of law.

The district court erred in disregarding Anadarko's failure to furnish notice and demand for defense against the Palowsky Lawsuit to AESI "promptly", per the Indemnities section of Anadarko's MSC, which established a genuine issue of material fact that precluded summary judgment awarding full relief to Anadarko.

The district court erred in disregarding AESI's responsive evidence of its affirmative defenses – which established genuine issues of material fact that precluded summary judgment.

The district court erred in awarding Anadarko amounts representing fees incurred to defend the Palowsky Lawsuit under Rule 54 – over AESI's Demand for a jury trial of the issue.

The district court erred in awarding Anadarko every penny claimed for fees incurred to defend the Palowsky Lawsuit – when its proof failed to establish that the fees were for necessary services and were reasonable.

The summary judgment evidence and briefing before the district court established that Anadarko had failed to meet its burden of proving that AESI was obligated to defend or to indemnify Anadarko against the Palowsky Lawsuit as a matter of law.  Alternatively, that genuine issues of fact on AESI's defenses served to preclude summary judgment for Anadarko.  AESI respectfully urges this Court to reverse the district court's rulings.  Should this Court perceive a need for additional evidence to resolve issues regarding the existence or extent of defense and indemnification obligations, or of the amount of attorneys' fees, AESI respectfully requests a remand to the district court for trial on those issues.

# ARGUMENT

## I. The District Court Erred By Granting Anadarko's Motion For Summary Judgment And Ruling, As A Matter Of Law, That The MSC's Indemnities Provision Was Enforceable Against AESI

### A. The standard of review is *de novo*.

Orders granting a motion for summary judgment are reviewed *de novo*.  *TIG Ins. Co. v. Woodsboro Farmers Coop.,* 117 F.4th 715 (5th Cir. 2024); *Rogers v. Jarrett*, 63 F.4th 971, 975 (5th Cir. 2023).  Summary judgment is only appropriate if the pleadings and record demonstrate no genuine dispute of material fact, construing all justifiable inferences in favor of the nonmovant." *Sanchez Oil & Gas Corp. Crescent Drilling & Prod., Inc*., 7 F.4th 301, 309 (5th Cir. 2021).  A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party.'" *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When the moving party "fail[s] to demonstrate that there are no genuine disputes of material fact," an order granting summary judgment must be reversed. *Allen*, 63 F.4th at 304.

### 1. The District Court Erred By Enforcing The MSC's Choice of Texas Law Provision

The district court's Order erred by deeming, without analysis or evaluation, the MSC's Choice of Law provision to be enforceable with respect to these disputes over the Palowsky Lawsuit – which uncontestably arose from operations in oilfields in Louisiana and in Wyoming.  (ROA.619 - 623).  Had the court properly evaluated the MSC, the evidence of those operations, the Palowsky Lawsuit's allegations, and Fifth Circuit precedents, it would have realized that the interests of Louisiana and/or Wyoming in the resolution of these disputes displace Anadarko's efforts to enforce the Texas choice of law provision.  The district court erred by enforcing the Venue / Law provision in the MSC that designated Texas substantive law.  (RE-T8; ROA.296 - 303).

### a. Choice of Law Analysis

In a diversity action, Texas's choice-of-law framework controls since it is the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Though Texas courts recognize the right of parties to select a particular state substantive law, such rights are not unlimited. *Cardoni v. Prosperity Bank*, 805 F.3d

573, 580 (5th Cir. 2015)(as choice-of-law provisions control outcomes of disputes, they affect a state's power to regulate conduct within its borders).   Under RESTATEMENT (SECOND) OF CONFLICT OF LAWS §187(2), a choice-of-law provision should be set aside if:

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188 [of the RESTATEMENT (SECOND) OF CONFLICTS OF LAWS], would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Cardoni*, 805 F.3d at 581 (emphasis added); *see DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 677-78 (Tex. 1990) (following the RESTATEMENT framework).

AESI's evidence presented uncontroverted evidence that the operations for Anadarko were conducted at sites in Louisiana and of Wyoming – not in the state of Texas.   As a result, the interests of Louisiana, and of Wyoming, in applying their laws to this dispute were materially greater than those of Texas.   The district court's summary determination that neither Louisiana, or Wyoming, had any such interest in applying their laws and policies to this dispute was error.   As was the district court's decision to enforce the Choice of Law provision in the MSC (for Texas) to deem the MSC's Indemnities provisions to be enforceable by Anadarko.   (RE-T5; ROA.619 - 623).   *Cardoni*, 805 F.3d at 582; *Wildhorse Res. Mgmt. Co., LLC v. G&C*

17

*Constr. Int'l Co.*, No. H-18-2456, 2019 WL 5684228 (S.D. Tex. Oct. 31, 2019). Had the district court properly analyzed the factors and the evidence that the operations giving rise to the Palowsky Lawsuit were conducted in Louisiana and in Wyoming, it would have realized that the Texas choice of law provision was unenforceable under the facts of the dispute between AESI and Anadarko. Instead, the substantive laws of Louisiana are properly applicable to Anadarko's effort to enforce the indemnity provisions of its MSC.

### b.  Louisiana has a more significant relationship than Texas.

Determinations of which state has a more "significant relationship" involve (a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, place of incorporation, and place of business of the parties. RESTATEMENT § 188(2); *Cardoni*, 805 F.3d at 582; see *Wildhorse Res., supra,* 2019 WL 5684228 *4.

### c. The place of contracting.

The evidence presented by AESI established that the MSC was signed in its office in Louisiana, and returned to Anadarko's office in Texas for countersignature. (RE-T9; ROA.492 - 493). While Texas may have been a site of contracting, the remaining factors overwhelmingly favor Louisiana and provided ample weight to overcome the "place of contracting" factor.

### d. The place of performance.

Place of performance is of "paramount importance" when analyzing contacts for service agreements. *Maxus Exploration Co. v. Moran Bros*., 817 S.W.2d 50, 53 (Tex. 1991). The factors include (1) where the services were performed and (2) where the indemnity obligation attaches (i.e., the underlying suit for which defense is sought). *Cannon Oil and Gas Well Services, Inc. v. KLX Energy Services,* 20 F.4th 184 (5th Cir. 2021). In evaluating the most significant relationship, courts often conclude that the place of indemnification is more important. *Cannon Oil*, 20 F.4th 184. Here, the services that AESI rendered to Anadarko, and the Palowsky Lawsuit for which Anadarko seeks a defense and indemnity both are in Louisiana. (RE-T9; ROA.494 - 495). As such, this factor decidedly weighs in favor of Louisiana. *Wildhorse Res.,* 2019 WL 5684228 *5 - 6.

### e. The MSC's subject matter.

The Declaration of Stanley Palowsky, and the invoices for the remediation work that AESI performed for Anadarko, demonstrated that the operations took place at oilfield sites in Louisiana. (RE-T9; ROA.494 – 495; ROA.526-585). This heavily weighs in favor of Louisiana law. *Roberts v. Energy Dev. Corp*., 235 F.3d 935 (5th Cir. 2000) (giving significant weight to Louisiana as place of performance and location of injury for which indemnity was sought; declining to enforce Texas choice-of-law provision and applied Louisiana law, including Oilfield Anti-

Indemnity Act)); *Cannon Oil and Gas Well Services, Inc. v. KLX Energy Services,* 20 F.4th 184 (5th Cir. 2021)(as Wyoming was site of operations, and of lawsuit, it had substantial interest in application of its law; citing *Wildhorse Res.,* 2019 WL 5684228 *4.

### f. Domicile, residence, nationality, place of business of the parties.

The state where the parties are domiciled have an "obvious interest" in the application of its laws.  AESI is headquartered in Monroe, Louisiana.  (RE-T9; ROA.492).  Anadarko is headquartered in The Woodlands, Texas.  As such, this factor is neutral. *See Cardoni*, 805 F.3d at 583 (concluding that this factor was "cancelled out" where the parties were headquartered in Texas and Oklahoma).  As outlined above, though Texas was the site of contract and the parties' states of domicile cancel each other out, Louisiana clearly has the greater contacts—in terms of both number and quality.

### 2. Louisiana has a materially greater interest in the MSC than Texas.

AESI's evidence established that Anadarko's claims for defense and indemnification for the Palowsky Lawsuit arose from operations performed at sites in Louisiana and Wyoming.  (RE-T9; ROA.494 - 495).  In determining a "materially greater" interest in a dispute, the focus is on what truly is at stake; here, an indemnity provision. *Cannon Oil and Gas Well Services*, 20 F.4th 184, 189; *DeSantis*, 793 S.W.2d at 679.  The Palowsky Lawsuit is pending in Louisiana court.  (ROA.338 –

406).  Plainly, Louisiana or Wyoming has significant interest in applying its laws to this dispute because of its impact on natural and corporate citizens in those states, business operations occurring in those states, and indemnity obligations in those states.  *Cardoni*, 805 F.3d at 584.  Louisiana has a "strong interest" in having its own state public policy being applied to a Louisiana company in respect of operations in Louisiana that give rise to a Louisiana lawsuit.  *See Roberts v. Energy Dev. Corp.*, 235 F.3d 935, 943 (5th Cir. 2000)(disregarding Texas choice-of-law provision in oilfield contract, where injury occurred in Louisiana, lawsuit was filed in Louisiana, and defendant was domiciled in Louisiana); *Cannon Oil and Gas Well Services,* 20 F.4th at 189 (same, where operations and suit were in Wyoming).  While Texas has an interest in contracts as written by a company that operates in multiple jurisdictions, the interests that favor Louisiana are "weightier" in this case.

### 3. Enforcement of the MSC's Choice of Texas Law provision contravened Louisiana policy

The district court erred by deeming the MSC's provision purporting to designate Texas substantive law to be enforceable, when doing so would contravene a fundamental policy of Louisiana.  The Fifth Circuit recognizes that public policies underlying anti-indemnity acts are "fundamental." *Roberts v. Energy Dev. Corp*., *supra*, 235 F.3d at 943; *Wildhorse Res.,* 2019 WL 5684228 *4.  The Louisiana Oilfield Anti-Indemnity Act expressly qualifies. See LA. REV. STAT. § 9:2780 ("LOIA").  LOIA rests upon an express legislative finding "that an inequity is foisted

21

upon certain contractors and their employees by the defense or indemnity provisos…contained in some agreements pertaining to wells for oil, gas, or water." *Cardoso-Gonzales v. Anadarko Petroleum Corp*., 326 F.Supp.3d 273, 281 (E.D. La. 2018) (quoting § 2780(A)). The law "declare[s] null and void and against public policy…any provision in any agreement which requires defense and/or indemnification, for death or bodily injury to persons, where there is negligence or fault (strict liability) on the part of the indemnitee . . . . " §2780(A); *Verdine v. Ensco Offshore Co*., 255 F.3d 246, 250 (5th Cir. 2001) (LOIA nullifies provisions in any agreement that require defense and/or indemnification where there is any negligence or fault on the part of the indemnitee).

By contrast, the Texas Oilfield Anti-Indemnity Act, TEX. CIV. PRAC. & REM. CODE §§ 127.001-127.007 ("TOIA") contains a broad exception that permits certain agreements supported by liability insurance coverage to be furnished by the indemnitor. *See Sonat Exploration Co. v. Cudd Pressure Control, Inc*., 271 S.W.3d 228, 231 (Tex. 2008) ("Under Texas law, oilfield indemnity clauses are valid if they are mutual and supported by liability insurance. Under Louisiana law, such clauses are invalid if the party seeking indemnity was negligent or strictly liable."). The Fifth Circuit has held that where LOIA is applicable, applying the TOIA would "contravene Louisiana's explicit and unambiguous public policy against indemnification agreements in any form." *Roberts v. Energy Dev. Corp*., 235 F.3d

22

935, 943 (5th Cir. 2000) (where choice-of-law provision would call for application of TOIA in lieu of LOIA, court refused to do so, and ordered reversal).

In sum, the district court erred by enforcing the Texas Choice of Law provision in the MSC, as the summary judgment record established that: a) Louisiana has a materially greater interest in applying its Act and policies to the MSC in this dispute; and b) resorting to Texas law to order AESI to provide indemnity to Anadarko against the Palowsky Lawsuit, contravened a fundamental policy of Louisiana against indemnifying a party at fault in an oilfield services context. As a result, the district court's decision to enforce the MSC's Indemnities provision against AESI (RE-T5, ROA.622-623) was erroneous, and warrants reversal.

### B. The Louisiana Oilfield Anti-Indemnity Act Precludes Enforcement of the Indemnity Provision

Louisiana allows a party to be indemnified against his or her own negligence so long as that intent is clearly expressed. *Rodrigue v. LeGros*, 563 So.2d 248, 254 (La. 1990). But as to agreements related to oil and gas production, such as the Anadarko MSC, LOIA "creates a public policy exception to the general rule. *Verdine v. Ensco Offshore Co.*, 255 F.3d 246, 250 (5th Cir. 2001). When LOIA applies, any indemnity obligation is "nullified and void." *See* §2780(G). The Fifth Circuit's approach examines a contract's involvement with a well, and with "operations related to the exploration, development, production, or transportation of

oil, gas, or water". *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 991 (5th Cir. 1992). The involvement should be considered in relation to the nature of the contract, rather than the task or activity that led to the incident." *Cardoso-Gonzalez*, 326 F.Supp.3d at 282.

Here, the services that AESI provided to Anadarko involved activities in drilling and operation of exploratory and development wells, seeking and producing oil, gas and other minerals for itself and for the accounts of others and in activities related thereto. AESI's work for Anadarko was performed at the Branch and Sarepta sites, each located in the State of Louisiana. (RE-T9; ROA.494 at para. 10 – 16; ROA.526-585). That work performed for Anadarko, the invoices submitted to Anadarko, and the payments gave rise to the fraud and racketeering allegations against Anadarko and its co-conspirators – and to the Palowsky Lawsuit. (RE-T9; ROA.494 at para. 10 – 16; ROA.526-585). Since the LOIA properly applies to Anadarko's claims against AESI for defense and indemnification against the Palowsky Lawsuit, the district court erred by concluding that the MSC's Indemnities provision was enforceable against AESI. *Cardoso-Gonzalez*, 326 F.Supp.3d at 282; *see also Verdine*, 255 F.3d at 253.

Separately, the district court's Order (RE-T5; ROA.622-623) and its Judgment (RE-T7; ROA.627-628) erred by disregarding AESI's evidence that Anadarko's claims for defense and indemnification against the Palowsky Lawsuit

also arose out of operations performed at the Carpenter A-1 Wellsite in the State of Wyoming. (RE-T9; ROA.494 at para. 10 - 16). Wyoming, like Louisiana, has a strong public policy against indemnification for unlawful conduct. Wyoming's interests were strong enough to displace a purported Texas choice of law provision in a similar MSC. In *Collins Backhoe & Water Service v. Anadarko Petroleum Corporation*, 2016 WL 1162191 (S.D. Tex. 03/23/2016), Judge Rosenthal held that Wyoming's interests were strong enough to displace the Texas choice of law provision in an Anadarko MSC. The rationale applied in Collins applies to Anadarko's claims against AESI for defense and indemnification against the Palowsky Lawsuit, as the claims also arise out of operations performed at a wellsite in the State of Wyoming. Accordingly, the district court erred by concluding that those provisions in the MSC's Indemnities provision were enforceable against AESI even as respects claims arising from operations conducted at the Carpenter #A-1 Wellsite in Wyoming. (RE-T5; ROA.622-623), (RE-T7; ROA.627-628).

## C. Under Any Substantive Law, the Obligation to Indemnify Anadarko Against The Palowsky Lawsuit Is Unenforceable, and Genuine Issues of Fact Precluded The District Court's Grant Of Relief

### 1. Anadarko Sought Indemnity for Unlawful Misconduct By Its Employee – Such That Public Policy Prohibited The Award of Defense / Indemnification

The Palowsky Lawsuit expressly alleges that Anadarko's manager Howard enabled and engaged in a scheme to overbill Anadarko for services, for which

Anadarko is vicariously liable as her employer. (ROA.363-366 at para 78–81); (RE-T9; ROA.495 - 499). It further alleges that Howard and other Anadarko employees fraudulently suppressed environmental conditions and financial exposures, for which unlawful conduct Anadarko is vicariously liable. (ROA.373 - 379). As explained below, the case precedents and public policies of not only Louisiana, but of Texas, militate against awarding indemnification to Anadarko for such unlawful misconduct by its personnel. However, with little heed to the specific accusations against Howard and Anadarko in the Palowsky Lawsuit, or public policy against indemnifying another for such unlawful misconduct, the district court ordered AESI to fully indemnify Anadarko against all claims for damages. (ROA.622)

Under Louisiana substantive law, "[a]ny clause is null that, in advance, excludes or limits the liability of one party for intentional or gross fault that causes damage to the other party." La. C.C. art. 2004. Accordingly, courts should refuse to enforce an agreement that would serve to immunize, or to indemnify, an indemnitee from the consequences of unlawful acts. See *Palmisano v. Mascaro*, 611 So. 2d 632 (La. Ct. App. 4th Cir. 1992), *opinion vacated on reh'g on other grounds*, (Dec. 16, 1992) *writ denied*, 614 So. 2d 80 (La. 1993) (where limited partnership agreement imposed fiduciary responsibilities on partner, Louisiana public policy precluded enforcement of indemnification provision to immunize partner against damage claims for breaching fiduciary obligations).

Further, assuming arguendo that the district court's decision to apply Texas substantive law to Anadarko's claims for indemnification from AESI were correct, the court still erred in ruling that Anadarko was entitled to defense and indemnification against the claims for unlawful conduct by Ms. Howard, and by Anadarko as her employer, in the Palowsky Lawsuit. (RE-T5; RE-T7; ROA.622-623). Texas jurisprudence holds that a contract that violates public policy is void and unenforceable. See, e.g., *Montgomery v. Browder*, 930 S.W.2d 772,778 (Tex. App. - Amarillo 1996, no writ). Texas courts will not enforce an agreement for an illegal or unlawful purpose. See *Reyes v. Storage Processors, Inc.*, 995 S.W.2d 722, 725 n. 3 (Tex. App. - San Antonio 1999, pet denied). This doctrine prohibits maintaining a cause of action that is predicated upon an admittedly unlawful act of that party. *See Macias v. Moreno*, 30 S.W.3d 25, 29 (Tex. App. - El Paso 2000, *pet. denied*); *Saks v. Sawtelle, Goode, Davidson, Troilo*, 880 S.W.2d 466, 469 (Tex.App. - San Antonio 1994, *writ denied*) ("… no action will lie to recover a claim for damages, if to establish it the plaintiff requires aid from an illegal transaction, or is under the necessity of showing or in any manner depending upon an illegal act to which he is a party."). Nor will Courts applying Texas law enforce an agreement to indemnify a tortfeasor against his or her own intentional misconduct. *Roman Catholic Diocese of Dallas ex rel. Grahmann v. Interstate Fire & Cas. Co.*, 133

S.W.3d 887, 896 (Tex. App.-Dallas 2004, pet. denied) ("Public policy prohibits allowing a person from insuring against his intentional misconduct.').

When AESI's allegations of misconduct by Howard and Anadarko in the Palowsky Lawsuit (ROA.363-366 at para 78–81); (RE-T9; ROA.495 - 499) are read in light of the Texas precedents cited above, they reveal the district court's error in awarding indemnification to Anadarko for the unlawful conduct described in the Lawsuit.  The district court's rulings (RE-T5; RE-T7; ROA.622-623) award a form of indemnification that is contrary to public policy, and represent error.  Reversal is therefore warranted.

### D. The District Court Erred by Disregarding Evidence of Anadarko's Conduct That Raised a Fact Issue Of Estoppel

Further, Anadarko's conduct in the Palowsky Lawsuit estops it from pursuing AESI for alleged breach of the MSC, or for declaratory judgment, in this action.  The record showed that Anadarko filed its Answer in the Palowsky Lawsuit without ever raising any provisions of the MSC, such as venue, choice of law, or indemnity.  (RE-T9; ROA.493-494; 500 - 503).  It filed dispositive motions and litigated in Louisiana state court for seven years without ever raising the issues of venue, choice of law, or indemnity.  (RE-T9; ROA.493-494; 500 - 503).   Indeed, the first date that Anadarko even raised the issue of indemnification from AESI was March 20, 2024 - the date it filed this action – one day before the parties attended a mediation in the Ouachita

Parish lawsuit. (RE-T9; ROA.493). After six years, that was the first notice AESI received of any request for defense or indemnification. (RE-T9; ROA.493). The district court chose to disregard this undisputed evidence that Anadarko's conduct constituted estoppel, and in turn, raised a genuine issue of material fact on AESI's affirmative defense of estoppel. That constituted error that warrants reversal of the district court's judgment, and remand for trial on the merits.

### E. The District Court Erred by Ordering AESI To Indemnify Anadarko For All Damages, Including The Punitive Damages Sought – Which Are Expressly Excluded

Further, the district court erred by ordering AESI to indemnify Anadarko against all damages sought in the Palowsky Lawsuit – even for the punitive damages sought against Anadarko and Howard. (RE-T5; ROA.622-623) (RE-T7; ROA.627-628) However, the Indemnities provision of the MSC expressly states that:

> (3) The Indemnity obligations contained in this Agreement do not include indemnification for punitive or exemplary damages under any law or otherwise.

(RE-T8; ROA.300). This ruling also constituted error that warrants reversal of the district court's judgment, and warrants remand for trial on the merits.

### F. The District Court Erred by Disregarding Uncontroverted Evidence Of Anadarko's Failure to "Promptly Notify" AESI of Its Claim for Indemnification Under the MSC

The district court erred by disregarding Anadarko's failure to "promptly notify" AESI of any intent to seek indemnification against the Palowsky Lawsuit –

29

despite that express requirement in its MSC.  As the party seeking to summarily

enforce the MSC's Indemnities provision against AESI, Anadarko bore the burden

to furnish evidence of compliance with the following notice provision:

> (7)  Each Party **will promptly notify the other Party** after receipt of any Claim for which it may seek indemnification. Each Party also shall immediately notify the other of any occurrence in which physical Injury occurs and to complete and provide the other party with an accident report for each such occurrence.

(RE-T8; ROA.296 -303 at Para. 7) (emphasis added).  Not only did AESI object to

Anadarko's failure to promptly notify it and demand indemnification  (ROA.489 -

490), but it submitted the Palowsky Declaration as proof of its breach.  (RE-T9;

ROA.493).  If, as Anadarko now contends, the Palowsky Lawsuit constituted a

Claim that entitled Anadarko to seek indemnification, the district court erred by

ignoring Anadarko's failure to promptly notify AESI after receipt of the Lawsuit in

2017 – and by proceeding to award Anadarko 100% of all defense fees that it

claimed.  (RE-T7; RE-T5; ROA.1226-1230)  Without regard to the date that

Anadarko may have actually incurred such fees to defend against the Palowsky

Lawsuit.

The district court chose to disregard settled precedents that strictly enforce

provisions requiring: 1) an indemnitee to promptly notify an indemnitor of a claim

or suit that may trigger a right to recover defense costs; or 2) notice as a condition

precedent to indemnitor's duty to reimburse any defense costs incurred or paid by

indemnitee. *See Emerald Forest Utility Dist. v. Simonsen Const.*, 679 S.W.2d 51, 54 (Tex. App. -- Houston [14th Dist.] 1984, *no writ*) (if an indemnity contract obligates indemnitee to give notice to the indemnitor, compliance with this provision is generally a condition precedent to enforcement). In *Royal Ins. Co. of Am. v. Hartford Underwriters Ins. Co.*, 391 F.3d 639, 644 (5th Cir. 2004) the panel reiterated that a liability insurer's duty to defend does not arise until the policyholder tenders notice of a claim to the insurer. *Royal Ins. Co.*, 391 F.3d at 644. As a result, an insurer is not obligated to pay defense costs incurred by the policyholder before the date that notice and request for a defense is tendered. *Royal Ins. Co.*, 391 F.3d at 644. The panel concluded that the claimant could only recover "post-notification defense costs." *Royal Ins. Co.*, 391 F.3d at 644 (citing *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 400 (5th Cir. 1995)).

Despite the uncontroverted proof of Anadarko's failure to "promptly notify" AESI of the subject Claim for which it intended to seek indemnification, the district court failed to mention the deficient notice in its Order - and awarded full relief to Anadarko. (RE-T5; RE-T7; RE-T4; ROA.1226-1230)  AESI's evidence established that Anadarko served no notice of intent to seek indemnification under the MSC until March 21, 2024 – via its Complaint in the current action filed in Houston. (RE-T9; ROA.493).  Plainly, AESI's evidence of insufficient and untimely notice presented a fact issue that precluded summary judgment for Anadarko, and the

31

subsequent award of all fees – particularly those incurred before March 2024. (RE-T5; RE-T7; ROA.1226 – 1230) The district court erred by disregarding Anadarko's unexcused failure to notify AESI "promptly" of its demand for indemnification – and by proceeding to order AESI to pay all defense costs incurred by Anadarko.

The district court's initial error (RE-T5; ROA.622-623) (RE-T7; ROA.627-628) was compounded in its subsequent Orders directing AESI to pay all attorneys' fees, expenses, and costs of court Anadarko claimed for the Palowsky Lawsuit – even the fees allegedly incurred prior to March 21, 2024. (RE-T4; ROA.1226-1230). Because AESI presented evidence raising genuine issues of material fact on AESI's affirmative defense of lack of prompt notice (RE-T9; ROA.493), the district court erred by granting all attorneys' fees incurred by Anadarko over a six-year period, with no effort to allocate between fees incurred before March 21, 2024, and fees incurred after that date. See *Royal Ins. Co. of Am.*, *supra*, 391 F.3d at 644.

## II. The District Court Erred In Granting Anadarko's Motion To Fix Attorneys' Fees, And By Awarding The Full Amount of Fees Sought

### A.    The Standard of Review is Abuse of Discretion.

A district court's award of attorneys' fees is reviewed for abuse of discretion. *Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347, 352 (5th Cir. 2019). To constitute an abuse of discretion, the district court's decision must be either premised on an erroneous application of the law, or on an assessment of the evidence that is clearly

erroneous." *Torres*, 945 F.3d at 352 (quoting *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008)).

> **B.    The District Court Erred In Granting Anadarko's Motion To Fix Attorneys' Fees Via Rule 54, Over AESI's Demand for Jury and Objections**

Evaluation of the documents Anadarko attached to its Motion To Fix Attorney Fees and Costs reveals that the "Memorandm [sic] and Order Awarding Costs and Attorneys' Fees" (RE-T4; ROA.1226-1230) constitutes an abuse of discretion. Firstly, the district court overlooked a key tenet of law: that the amount of fees paid to defend the Palowsky Lawsuit constitutes an element of the damages for the remedy Anadarko seeks in its Complaint against AESI.  AESI timely filed a Demand For Jury in this action. (ROA.258).  Issues pertaining to the amount of fees incurred and paid to defend the Palowsky Lawsuit in Ouachita Parish are elements of the remedy and damages for Anadarko's claims against AESI in this action. Accordingly, such issues of fact must be submitted to the jury for determination. Yet the district court disregarded AESI's request for those substantive issues to be determined by a jury, not via a post-judgment motion under Fed.R.Civ.P. 54.

While the district court's Order (RE-T4; ROA.1226-1230) cited the case of *Richardson v. Wells Fargo Bank, N.A.*, 740 F.3d 1035, 1037 (5th Cir. 2014), it failed to apply its key tenet – that Texas law distinguishes between "compensation owed for an underlying harm and fees that may be awarded for counsel's services."

*Richardson*, 740 F.3d at 1037, citing *In re Nalle Plastics Family Ltd. P'ship*, 406 S.W.3d at 168, 172 (Tex. 2013). The *Richardson* court recognized that in some cases attorney's fees are "…compensation for an underlying harm and therefore recoverable as damages" – and are "considered damages if the fees are incurred in litigation with a third party …". *Richardson*, 740 F.3d at 1037. That precisely describes the fees that the district court awarded to Anadarko – particularly fees for representation of Dana Howard. *Richardson*, 740 F.3d at 1038; see also *American Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 488 (5th Cir. 2004) (damages recoverable by policyholder in suit against insurer included value of attorneys' fees incurred to defend underlying tort lawsuit, and court properly submitted the issue to the jury).

Here, the district court abused its discretion by failing to recognize that the amount of fees incurred and paid by Anadarko to defend the Palowsky Lawsuit constitutes an element of its claim against AESI for breach of the MSC – and should be submitted to the jury demanded by AESI. (Demand, ROA.22-20059.258) As a result, evidence of the legal services rendered to Anadarko to defend the Palowsky Lawsuit, which services were necessary, and whether the hours billed and fees charged were reasonable, should have been tried to a jury. The district court therefore erred and abused its discretion by proceeding to grant Anadarko's Motion To Fix Attorney Fees via a post-judgment motion under Rule 54 (RE-T4;

ROA.1226-1230) and by summarily awarding Anadarko the full amount it sought - $953,254.91. *Richardson, supra*, 740 F.3d at 1037; *American Home Assur. Co., supra*, 378 F.3d at 488. Reversal of that ruling is warranted.

### C. The District Court Erred In Granting Anadarko's Motion To Fix Attorneys' Fees When It Failed To Satisfy The Burden of Proof

As the fee applicant, Anadarko bore the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. *Tyler v. Cedar Hill Independent School Dist.*, 433 Fed.Appx. 265 (5th Cir. 2011) The supporting documentation "must be sufficient for the court to verify that the applicant has met its burden." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.1995) (per curiam); see also *Leroy v. City of Houston*, 831 F.2d 576, 586 (5th Cir.1987) ("[T]he burden of proof of reasonableness of the number of hours is on the fee applicant ... and not on the opposing party to prove their unreasonableness." (citation omitted)).

### 1. The Complete Redaction Of Each Time Entry Precludes Any Meaningful Evaluation Of The Legal Services

Submission of attorney invoices may be an appropriate form of evidence to support a request for fees. But when a party chooses to redact information from those invoices, as did Anadarko, redactions that preclude *any* meaningful evaluation of the party's fee request are completely improper. *Randolph v. Dimension Films*, 634 F.Supp.2d 779, 800 (S.D. Tex. 2009). The invoices must still provide proof of

the nature of the work, who performed the services, the hourly rate, when the services were performed, and the number of hours worked. *Randolph*, 634 F.Supp.2d at 800. Further, law firm invoices should be excluded as evidence if the redacted entry fails to "provide sufficient information to classify and evaluate the activities and hours expended." *Randolph*, 634 F.Supp.2d at 800.

When the applicant submits only descriptions of time spent that are vague, or insufficient, courts may exclude time expended on insufficiently described tasks from an award of fees. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993); *see also La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995) (holding that "[t]he district court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review"). A complete entry includes the date, the number of hours spent (calculated to the tenth of an hour), and a short but thorough description of the services rendered. *League of United Latin Am. Citizens No. 4552 (LULAC) v. Roscoe Indep. Sch. Dist.*, 119 F.3d 1228, 1236 (5th Cir. 1997). The description must "inform the Court precisely what work was done." *Id.* A time entry is "vague" when it is "not illuminating as to the subject matter" or fails to describe "precisely what was done." *Leroy v. City of Houston (Leroy II)*, 906 F.2d 1068, 1080 (5th Cir. 1990).

Here, Anadarko chose to completely redact ***every single description of the services rendered*** from each invoice attached to its Motion To Fix Fees. (ROA.647-

1024).  Under settled law, it was Anadarko's burden to disclose the legal services rendered by its defense counsel for the Palowsky Lawsuit - in order to prove that the services were necessary for the defense, and the value of those services.  Yet, inexplicably, Anadarko chose to conceal the services.  (ROA.647-1024).  That approach precluded any meaningful evaluation of the legal services its attorneys had furnished – nor the amount of time expended on each such activity.  By choosing to redact the service description from every single invoice, Anadarko failed to meet its burden to provide sufficient information to support Anadarko's contentions about the necessity of the services rendered in the Palowsky Lawsuit.

As a result, the record before the district court contained no valid evidence of the legal services actually rendered to Anadarko to defend the Palowsky Lawsuit. Nor any evidence whether such services were, or were not, necessary for the defense of the Palowsky Lawsuit.  Nor whether the hours recorded, and fees charged, for each such service were reasonable.  Undeterred by the lack of valid supporting evidence, the district court awarded Anadarko every penny sought in its Motion to Fix Fees. (RE-T4; ROA.1226-1230)  As a result, the award of over $900,000 in fees constitutes an abuse of discretion, and warrants reversal.  *Louisiana Power, supra*, 50 F.3d at 326; *Leroy v. City of Houston (Leroy I)*, 831 F.2d 576, 585-86 (5th Cir. 1987) (where district court chose to accept all hours claimed from records that were "scanty," completely missing, or lacking explanatory detail, reversal was ordered).

### 2. The District Court Erred In Regarding The Mike Haysley Declaration As Support For Its Award of Attorneys' Fees To Anadarko

Over AESI's Objections, the district court considered the Declaration of Mike Haysley of Anadarko (ROA.642 – 643) as evidentiary support to award fees to Anadarko. Its decision to do so, and grant the fee award, was error. (RE-T4; ROA.1226-1230) Haysley's Declaration expressed no proper foundation for personal knowledge of the legal services rendered to Anadarko, nor whether the fees incurred / paid were reasonable, as it fails to state that Haysley was employed at Anadarko, or at Occidental, during 2017 or 2018. (ROA.642 – 643). The Declaration further fails to establish any personal knowledge of legal services rendered to Anadarko for defense against the Palowsky Lawsuit for any relevant time period. (ROA.642 – 643).

The district court also erred by overruling AESI's objections (ROA.1206-1212) to the lack of proper foundation and personal knowledge of Mike Haysley for the opinions asserted about the necessity of the legal services rendered to Anadarko in the Palowsky Lawsuit in Ouachita Parish, or the hourly rates shown in the law firm invoices. "Determination of the reasonable hourly rate for a particular community is generally established through affidavits of other attorneys practicing there." *Chisholm v. Hood*, 90 Fed. Appx. 709, 710 (5th Cir. 2004).

AESI's objected to the Declaration's failure to set forth any qualifications for Hayley to offer a reliable opinion on whether the legal services furnished to Anadarko in the Palowsky lawsuit were necessary, or whether the amounts charged were reasonable. (ROA.1206-1212)  See *Bynum v. Am. Airlines*, 166 F. App'x. 730, 736 (5th Cir. 2006) (vacating an order of attorney's fees when attorney's affidavit only provided a conclusory assertion that the fees were reasonable).  Haysley's Declaration failed to assert the most basic, threshold qualification for offering opinions about rates and fees: a license to practice law in the Courts of the State of Louisiana. (ROA.642 – 643).  In sum, Haysley failed to establish qualifications and knowledge about rates charged by law firms in Louisiana to defend matters similar to the Palowsky Lawsuit - to offer a reliable and valid opinion on whether the fees that were charged to, or were paid by, Anadarko for the Palowsky lawsuit were reasonable.  (ROA.642 – 643).

Under Fifth Circuit precedent, evidence of a reasonable hourly rate is determined based on the prevailing rate for attorneys with similar skill and experience in the relevant market. *McClain v. Lufkin Indus., Inc*., 649 F.3d 374, 381 (5th Cir. 2011) (citing *Blum v. Stenson,* 465 U.S. 886, 895 (1984)). "Determination of the reasonable hourly rate for a particular community is generally established through affidavits of other attorneys practicing there." *Chisholm v. Hood*, 90 Fed. Appx. 709, 710 (5th Cir. 2004).  Proof of a proposed hourly rate, whether by affidavit

or otherwise, should address actual hourly rates billed and paid in similar lawsuits. See *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 784 (S.D. Tex. 2007) ("The evidence to support an hourly rate entails more than an affidavit of the attorney performing the work but must also address the rates actually billed and paid in similar lawsuits.").

Given the lack of foundation and qualifications to offer valid opinions regarding rates and fees in Ouachita Parish, Louisiana, the Declaration's blanket statement about hourly rates charged and paid is, at best, too conclusory to constitute reliable evidence of even the hourly rates charged. (ROA.642). See *Bynum v. Am. Airlines*, 166 F. App'x. 730, 736 (5th Cir. 2006) (vacating an order of attorney's fees when attorney's affidavit only provided a conclusory assertion that the fees were reasonable). For these reasons, the district court erred in relying upon the unsupported assertions in the Haysley Declaration, and the completely redacted law firm invoices attached to it, as evidence supporting the Motion to Fix Attorney Fees. (RE-T4; ROA.1226-1230) Its award of over $900,000 in fees to Anadarko (RE-T4; ROA.1226-1230) therefore constituted an abuse of discretion. The Memorandum and Order should be reversed, and the issue of attorneys' fees remanded to the District Court for proper determination.

### 3. The District Court Erred by Awarding Anadarko All Fees Sought, When No Evidence Was Presented To Properly Segregate Fees

Fifth Circuit precedent also requires a fee claimant to segregate fees between claims for which fees are recoverable, and claims for which they are not. *In re Alonzo*, 540 F. App'x 370, 373 (5th Cir. 2013) (citing *Chapa*, 212 S.W.3d at 311). An exception exists "when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible." *Tranverse, LLC v. Iowa Wireless Serv.'s, LLC*, 992 F.3d 336, 344 (5th Cir. 2021) (citing *Kinsel v. Lindsey*, 526 S.W.3d 411, 427 (Tex. 2017)). However, the exception requires more than a "common set of underlying facts[;]" "it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* (alterations in the original) (internal citations omitted). Whether claims are so intertwined is a "mixed question of law and fact." *Id*. (citing *Chapa*, 212 S.W.3d at 313).

Here, the district court awarded Anadarko 100% of all fees it claimed, with evidence or expert testimony that segregated between legal services rendered to Anadarko against the claims for punitive or exemplary damages in the Palowsky Lawsuit, versus claims for other damages. (RE-T5; ROA.622-623; RE-T7; ROA.627-628)  But, as discussed *supra*, the MSC's Indemnity provision expressly relieves AESI of any obligation to indemnify Anadarko against the punitive damages being sought from Anadarko in the Palowsky Lawsuit.  (RE-T8; ROA.300)). Anadarko's Motion to Fix Fees offered no evidence to segregate the fees, nor to

establish that fees to defend the claims for actual damages were intertwined with those for punitive damages as to render segregation impractical. (ROA.633 - 643) Absent such proof of segregation, the district court abused its discretion in overlooking AESI's objections to the amount of fees being requested, and by summarily awarding Anadarko the full amount of fees sought for the defense of the Palowsky Lawsuit. The Order awarding attorneys' fees to Anadarko (RE-T4; ROA.1226-1230) should therefore be reversed. *Tranverse, LLC, supra*, 992 F.3d at 344.

## CONCLUSION

For these reasons, AESI asserts that the district court erred in choosing to grant summary judgment in favor of Anadarko. Based on the summary judgment evidence and legal authorities before the Court, the Anadarko MSC's Indemnities provision does not obligate AESI to defend or to indemnify Anadarko against the Palowsky Lawsuit as a matter of law. Alternatively, the summary judgment record contained evidence raising fact issues on the scope of AESI's obligations to defend, or to indemnify, Anadarko against the Palowsky Lawsuit – warranting reversal of the district court's Orders and Judgment. The district court further erred in summarily awarding over $1,000,000 in attorneys' fees to Anadarko on patently deficient proof. Should this Court conclude that more evidence is necessary to make fact findings to resolve issues regarding the existence or extent of defense and indemnification

obligations, or amount of attorneys' fees, AESI respectfully requests the Court remand the case to the District Court for further proceedings and a trial on those issues.

Dated:   May 30, 2025

Respectfully submitted,

By    */s/ Joseph R. Ward, Jr.*
      JOSEPH R. WARD, JR.
      jward@wardandcondrey.com
      La. Bar #08166
      438 S. New Hampshire St.
      Covington, LA  70433
      (985) 871-5223 / Fax: (985) 871-5234

**ATTORNEY-IN-CHARGE FOR
APPELLANT ALTERNATIVE
ENVIRONMENTAL SOLUTIONS, INC.**

**OF COUNSEL:**

PAUL K. NESBITT
pnesbitt@ksklawyers.com
Texas Bar No.: 014920600
S.D. Texas No. 10216
SUTTER & KENDRICK, P.C.
5858 Westheimer Rd., Suite 688
Houston, Texas  77057
(713) 595-6000 / Fax: (713) 595-6001

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing document has been filed using the ECF filing system and was served using ECF to the following counsel of record on May 30, 2025:

R. Keith Jarrett                    rjarrett@liskow.com
Laura Springer Brown            lespringer@liskow.com
LISKOW & LEWIS
1001 Fannin Street, Suite 1800
Houston, Texas 77002

*Counsel for Plaintiff / Appellee*

_____
*/s/ Joseph R. Ward, Jr.*
JOSEPH R. WARD, JR.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.   This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1, this document contains 9894 words.

2.   This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2016 in 14-Point Times New Roman font.

_____
*/s/ Joseph R. Ward, Jr.*
JOSEPH R. WARD, JR.